MILTON HARLOW ET AL. *v.* RICHARD
JAMES SCHROTT ET AL.

[No. 685, September Term, 1971.]

*Decided August 7, 1972.*

The cause was argued before MURPHY, C. J., and MORTON and ORTH, JJ.

*Joseph J. D'Erasmo*, with whom were *Vivian V. Simpson, Joseph B. Simpson, Jr., H. Algire McFaul* and *Simpson & Simpson* on the brief, for Milton Harlow, Marion Harlow and Linda C. Harlow, part of appellants. Submitted on brief by *Edward C. Bell, Hugh L. Reilly* and

*Bell & Reilly* for Cecil Thomas King and Ruth Ann King, other appellants.

*James A. Sullivan*, with whom were *Edward B. Layne, Jr.*, and *McInerney, Layne & McCormick* on the brief, for appellee Joseph P. Blocher, Administrator of the Estate of Judith Ann Schrott.

MURPHY, C. J., delivered the opinion of the Court.

A two-car collision occurred on April 15, 1966 involving a vehicle driven by Judith Ann Schrott, in which Linda Harlow was a passenger, and a vehicle driven by Ruth Ann King. Miss Schrott died the same day as a result of the accident, and Miss Harlow and Miss King were injured.

Maryland Code, Article 93, Section 112, in effect on the day of the accident, required that any action "for injuries to the person to be maintainable against an executor or administrator must be commenced within six calendar months after the date of the qualification of the executor or administrator of the testator or intestate." Section 112 was amended by Chapter 642 of the Acts of 1966; the amendment provided, among other things, that an action against a decedent's estate "may be instituted after the expiration of six months but within the statute of limitation in the event the deceased was covered by an existing insurance policy at the time of the occurrence, * * * the recovery in the event of a judgment against the estate to be limited to the extent of such existing insurance." By Section 3 of the Act it was provided: "That this Act shall take effect June 1, 1966."

Joseph P. Blocher qualified as administrator of Miss Schrott's estate on September 9, 1966. By declaration filed on February 14, 1969, and amended May 5, 1969, Harlow sued Blocher, Miss King, and others for personal injuries allegedly sustained by her in the accident. Blocher filed a plea of limitations to the declaration and moved for summary judgment; he claimed that as the action against him had not been commenced within six

months from the date of his qualification as administrator on September 9, 1966, limitations barred the suit. Responding to Blocher's plea and motion, Harlow claimed that under the amendment to Section 112, which became effective June 1, 1966, suit was properly filed against Blocher after the expiration of the six-month period (but within the three-year statute of limitations) since the decedent was covered by an insurance policy which was in existence on the day of the accident.

The court (Levine, J.) ruled that Section 112, as it existed on the day of the accident (April 15, 1966) and not, following its amendment, as it read on the day upon which the administrator qualified (September 9, 1966), governed the question whether the action against Blocher was timely filed. The court held, in effect, that since the accident occurred prior to the date of the amendment to Section 112, the six-month limitation provision was applicable and required that suit be filed against the administrator by March 9, 1967; and that since it was not filed within that time, limitations barred the suit. In so concluding, the court indicated its belief that *Dixon v. Checchia*, 249 Md. 20, controlled the question and mandated this result. The court thereafter granted partial summary judgment in Blocher's favor but directed that a hearing be held on the further issue raised by the pleadings as to whether there had been an estoppel and/or waiver of the time limitations contained in Section 112. From the court's entry of partial summary judgment, Harlow and King entered appeals to the Court of Appeals of Maryland; that court dismissed the appeals on the ground that in view of the provisions of Maryland Rule 605 a, the appeals were prematurely entered. See *Harlow v. Blocher*, 257 Md. 1. Thereafter, the question whether Blocher, through the acts and conduct of his agents, had waived or was estopped from asserting limitations was tried before a jury. Believing that Harlow failed to adduce any legally sufficient evidence of a waiver and/or estoppel, the court directed a verdict against Harlow on this issue. Both Harlow and King

again appealed; [1] each contends that the court erred in holding that Article 93, Section 112, as it existed prior to June 1, 1966, was controlling as to the period of limitations.

In *Dixon v. Checchia, supra,* the plaintiff Dixon was involved in an automobile accident with Checchia on February 16, 1965. Checchia died October 25, 1965 and an administrator of his estate was appointed December 10, 1965. Dixon filed suit against Checchia's administrator on September 28, 1966. Summary judgment was granted Checchia's administrator; as disclosed by the record in the case, the court, in its opinion granting the motion, held that Section 112, as it existed on the day Checchia's administrator qualified (December 10, 1965), contained a six-month limitation provision that was part of the substantive right to sue itself and was not merely procedural; that where the limitation period is part of the right to sue itself, the right becomes vested in both parties at the time the cause of action arises; that the term "cause of action" in the context of Section 112 means the "right of action" against the personal representative and not "the cause of action which arose against a tortfeasor on the occasion of the tort, for that cause was extinguished by the demise of the tortfeasor," (citing *Chandlee v. Shockley,* 219 Md. 493, and *Burket v. Aldridge,* 241 Md. 423). In holding that Dixon's suit was barred because it was filed after the termination of the six-month period, the court concluded:

> "Looking at the matter at hand, it appears clear that the rights of plaintiffs and defendant under Sec. 112 arose on December 10, 1965, when the defendant Administrator became qualified; that those rights under the law then exist-

---

1. King contends that she has standing to appeal from the court's entry of partial summary judgment in Blocher's favor because, as a codefendant in a suit to recover damages for personal injuries, she has a right to contribution from Blocher in the event he is held liable for negligence contributing to the plaintiff's injuries. See *Williams v. Dawidowicz,* 209 Md. 77.

ing included the six months limitation period proviso as well as a cause of action as to both parties; and that those rights became vested in both parties on December 10, 1965. The conclusion is inescapable that the exception clause grafted on the proviso clause of Sec. 112 by the amendment of June 1, 1966, cannot operate retroactively to create an exception to an already vested right."

It was against this background that, on appeal, the Court of Appeals addressed itself to the question whether the summary judgment had properly been entered. In deciding which law was applicable, the court quoted from *Janda v. General Motors*, 237 Md. 161, 168-169, that "various rules have been formulated by the courts to aid in determining whether a statute is to be applied retrospectively or prospectively." It concluded that, as recited in *Janda*, the following principle of law was applicable to the facts of the case, *i.e.*,

"Ordinarily a statute affecting matters or rights of substance will not be given a retrospective operation as to transactions, matters and events not in litigation at the time the statute takes effect: '* * * unless its words are so clear, strong and imperative in their retrospective expression that no other meaning can be attached to them, or unless the manifest intention of the Legislature could not otherwise be gratified. * * * (citing cases). An amendatory Act takes effect, like any other legislative enactment, only from the time of its passage, and has no application to prior transactions, unless an intent to the contrary is expressed in the Act or clearly implied from its provisions.' *Tax Comm. v. Power Company*, 182 Md. 111, 117."

The court noted that the period of limitations set forth in Section 112 is a part of the grant of the substantive

right to sue itself; that as such the amendment to Section 112 involved a matter of substance; and that since there was "no clear language in Section 112 requiring retroactive application * * * [that] the Legislature's intent can be carried out by a prospective application." At pages 25-26.

It is not clear from the opinion in *Dixon* whether the court, in determining that the amendment to Section 112 was not to be afforded retrospective effect, considered the date of the accident, the date of the tortfeasor's death, or the date of the administrator's qualification as the critical event in time by which it measured, under the test articulated in *Janda,* whether the amendatory act's provisions were applicable to "prior transactions," *i.e.,* "to transactions, matters and events not in litigation at the time the statute takes effect." Since each of these events in *Dixon* predated the effective date of the amendment to Section 112, the court had no need to, and did not specify which of them was the critical one because the flat six-month period of limitations was in effect at the time of the occurrence of each event. We think, therefore, that in the present case the court below was in error in concluding that *Dixon* was authority for the proposition that the date of the accident, and not the date of the appointment of the personal representative, was controlling. We view the question as an open one, not specifically decided in *Dixon,* and proceed now, in light of the principles enunciated in *Janda,* to consider it.

We observe at the outset that whether an amendment to a statute affecting a matter of substance applies, in the words of *Janda,* "to transactions, matters and events not in litigation at the time the statute takes effect" necessarily depends upon a proper application of the import of those words to the context of the particular subject matter of the amendatory act under consideration and the legislative intention in enacting it. In other words, the prior "transactions, matters and events" test enunciated in *Janda* is neither self-defining nor self-applying. We further observe that nothing in *Janda* is in-

tended to preempt the cardinal rule of statutory construction that courts seek to ascertain and give effect to the intention of the Legislature (unless that intention is constitutionally proscribed).[2] *Domain v. Bosley,* 242 Md. 1; *Height v. State,* 225 Md. 251; *Buckheit v. Buckheit,* 10 Md. App. 526. As was said in *McKeon v. State, Use of Conrad,* 211 Md. 437, 443, the object of all rules, canons of construction, and maxims is to act as aids and guides in discovering the real legislative intent; they are not completely rigid and intractable and must give way to a clear intention to the contrary.

Section 112 "created a liability which did not exist in common law; without the statute there would have been no right of action" (because otherwise it would have abated with the tortfeasor's death). *Burket v. Aldridge, supra,* at p. 431. The argument that Section 112 was a survivor statute and that under it the cause of action remained one against the deceased tortfeasor was flatly rejected in *Chandlee v. Shockley, supra.* The court held in that case that "the representative does not merely take the place of one against whom a claim has been asserted, but is made amenable, in his representative capacity, to service of process as an original party." At p. 497. It is, therefore, the appointment and qualification of the personal representative which brings into existence a party capable of being sued.[3] *Cornett v. Sandbower, Adm'r,* 235 Md. 339; *Behnke v. Geib,* 169 F. Supp. 647 (D.C. Md.). Consequently, it is the date of the personal representative's qualification, and not the day upon which the tort was committed, or the tortfeasor died, that governs and controls the exercise of the right af-

---

2. A statute, even if the Legislature so intended, will not be applied retrospectively to divest or adversely affect vested rights, to impair the obligation of contracts, or so as to violate the due process clause, or to operate as a Bill of Attainder or an *ex post facto* law. *Janda,* at p. 169.

3. Section 112 "is to be read in view of the right given by Maryland law for the appointment of an administrator by a person having a claim against the estate, if there are no relations or if those first entitled to letters fail to apply." *Burket v. Aldridge, supra,* at p. 427.

forded by the statute to institute and maintain the action. In other words, even though the period of limitations contained in Section 112 constitutes a condition precedent to the substantive right to maintain the suit, no right to sue [arises or] accrues under the section unless and until such time as a personal representative is appointed; it is the time of that event which, in view of the subject matter of the amendment to Section 112, we think the Legislature (charged as it is with knowledge of the *Janda* decision) intended as the gauge by which courts were to measure whether the extension of the period of limitations in cases where the deceased was covered by an existing insurance policy at the time of the accident, was to be applied to "prior transactions" under the *Janda* test. Thus, where the administrator's appointment predated the effective date of the amendment to Section 112, as in *Dixon v. Checchia, supra,* the period of limitations then in effect fixed the substantive rights of the parties and governed the time within which suit was required to be instituted. But where, as in the present case, the appointment of the administrator is subsequent to the passage of the amendment, its substance applies, prospectively only, to cases instituted against administrators appointed after June 1, 1966, the amendment's effective date, regardless of when the accident occurred or the tortfeasor died, so long as the suit is ultimately brought, as the amendment provides, "within the statute of limitation in the event the deceased was covered by an existing insurance policy at the time of the occurrence." See Maryland Code (1964 Repl. Vol.) Article 57, Section 1 (three-year period of limitations). In so concluding, we note that the Court of Appeals has held that the period of limitations contained in Section 112 is "consistent with the purposes and aims of limitation statutes generally." *Bertonazzi v. Hillman, Adm'x,* 241 Md. 361, 366. In that case, the court observed (p. 367):

> "* * * Statutes of limitations are designed primarily to assure fairness to defendants on the

theory that claims, asserted after evidence is gone, memories have faded, and witnesses disappeared, are so stale as to be unjust. The six-month statute of limitations in suits against executors or administrators has the added purpose of requiring claimants seeking damages resulting from the negligence of a decedent to make claim by suit within six months so that the personal representative of the decedent can make the prompt settlement of the estate contemplated by the law without liability for claims not filed within the time and in the manner prescribed."

Considering the substance of the amendment to Section 112, we think it impairs no constitutionally protected rights of the parties to apply it prospectively to cases instituted against administrators appointed after June 1, 1966. It was, in essence, the legislative purpose in amending Section 112 to except the decedent's insurance company from the six-month limitation period and thus to give the injured party three years from the date of the accident in which to file suit and recover an amount limited to the insurance coverage.

Nothing in *Smith v. Westinghouse Electric Corp.*, 266 Md. 52 (consolidated appeals Nos. 312 and 371, September Term, 1971), requires a different result. Those cases involved a wrongful death action under Maryland Code, Article 67, Section 4. The decedent had been injured on June 1, 1968 and died five days later as a result of his injuries. At that time, Section 4 provided that wrongful death actions must be commenced within two years after the decedent's death. Suit was not filed until June 9, 1970, more than two years after the death. In the meantime, however, the Legislature amended the limitations period in Section 4 from two to three years and provided, among other things, that it was to be applied retrospectively to causes of action arising prior to July 1, 1968. The Court of Appeals held that limitations

barred the suit, even though it was brought within the three-year period, because the General Assembly's effort to retroactively apply the amendment violated the Fourteenth Amendment to the federal constitution and Article 23 of the Maryland Declaration of Rights. The court reasoned that since the period of limitations set forth in Section 4 was not merely a limitation upon the remedy, but was a condition precedent to filing suit, the Legislature was unconstitutionally attempting to revive a cause of action theretofore absolutely barred (and thereby impair vested rights). We think it clear that the rationale of *Smith* inhibits a legislative effort to retroactively create a remedy theretofore extinguished by passage of time. Unlike *Smith,* the amendment to Section 112 does not undertake to revive a cause of action theretofore absolutely barred by limitations; on the contrary, in the present case limitations had not commenced to run when the amendment was enacted so that the amendment, applied prospectively, did not attempt retroactively to create a remedy theretofore extinguished by passage of time.[4]

Nor does our decision in *Wittel v. Baker,* 10 Md. App. 531 mandate a different result in this case. *Wittel* involved an amendment broadening the measure of damages in a wrongful death action brought under Maryland Code, Article 67, Section 4. We there concluded that the amendment was one of substance, that the cause of action under the statute accrued on death and not the commission of the tort, and that it applied to all cases in which death occurred after its effective date. We noted that in wrongful death actions under Section 4 the limitations period within which action was required to be filed commenced with the date of the death of the person wrongfully killed (and not, as here, with the date

---

4. In addition to extending the period of limitations the amendment to Section 112 created a new liability—the right to maintain an action for property damage as well as for personal injuries. We think the amendatory provisions in this respect were obviously intended by the Legislature to apply only to cases involving torts committed after June 1, 1966.

of the appointment of the administrator). Compare *Rich v. Mayor and City Council of Baltimore,* 265 Md. 647, and *Cline v. Mayor and City Council of Baltimore,* 13 Md. App. 337, affirmed June 12, 1972 by the Court of Appeals, 266 Md. 42.

Having concluded that Harlow's suit against Blocher is not barred by limitations, it is unnecessary for us to consider Harlow's further contention that Blocher waived or was estopped from asserting limitations by reason of the acts and conduct of his agents. We nevertheless note our agreement with Judge Levine that no evidence was adduced at the trial legally sufficient to demonstrate the existence of a waiver or estoppel.

In his brief, Blocher maintained that the appeal in this case is restricted to the entry of a judgment in his favor; and that still pending are claims made by Harlow against the decedent's father and a cross claim filed by King against Blocher. He refers us to the provisions of Maryland Rule 605 a to the effect that an appeal from a judgment adjudicating less than all of the claims arising out of the same cause of action may be premature, in the absence of an express determination by the lower court that there was no just reason for delay, and an express direction for the entry of judgment. See *Harlow v. Blocher, supra.* But at oral argument of the case, all parties urged that we consider the limitations question on its merits, rather than to dismiss the appeal as premature. We think the circumstances of the case are sufficiently unusual that the purposes of the Rule are not violated by our determination of the essential merits of the case. See *Burns v. Goynes,* 15 Md. App. 293.

> *Order granting motion for summary judgment vacated; case remanded for further proceedings in accordance with this opinion; costs to be paid by appellees.*